569 N.E.2d 162 (1991)
210 Ill. App.3d 443
155 Ill.Dec. 162
AMERICAN STANDARD INSURANCE COMPANY, Plaintiff-Appellant,
v.
ALLSTATE INSURANCE COMPANY, subrogee of the Estate of Joan K. Reidy, Deceased, Defendant-Appellee (Mark Runyan, Defendant).
No. 1-89-1902.
Appellate Court of Illinois, First District, Second Division.
March 5, 1991.
Rehearing Denied April 4, 1991.
*163 Purcell & Wardropel Chtd., Chicago (Robert L. Bartolone and Sandra Young, of counsel), for plaintiff-appellant.
Hinshaw, Culbertson, Moelmann, Hoban & Fuller, Chicago (D. Kendall Griffith, Peter C. Morse and Joshua G. Vincent, of counsel), for defendant-appellee.
Justice DiVITO delivered the opinion of the court:
This declaratory judgment action arises out of a motorcycle accident in which Joan Reidy, a passenger on a motorcycle driven by Mark Runyan, suffered injuries which caused her death. Plaintiff American Standard Insurance Company (American Standard) filed a complaint for declaratory judgment against defendants Mark Runyan and Allstate Insurance Company (Allstate), subrogee of the estate of Joan Reidy. The complaint alleged that, pursuant to a passenger liability exclusion, American Standard's motorcycle policy issued to Mark Runyan's father did not provide liability coverage. The circuit court granted Allstate's motion for summary judgment and denied American Standard's cross-motion for summary judgment.
American Standard now appeals, contending that the circuit court erred in finding that a cover illustration and a provision allowing passengers under certain circumstances when the insured's vehicle was *164 used for hire were in conflict with an exclusion barring coverage for all motorcycle passengers.
On August 11, 1985, Mark Runyan was driving his father's motorcycle when he lost control and crashed. As a result, Joan Reidy, a passenger on the motorcycle, suffered injuries which caused her death.
American Standard had issued to Mark's father, Robert Runyan, a motorcycle liability policy, which was in effect on the date of the accident and covered the involved motorcycle. Under the policy's uninsured motorists provisions, an insured, defined as anyone using the insured motorcycle, could recover for bodily injuries caused by the owner or operator of an uninsured motor vehicle.
The cover of American Standard's policy contained an illustration of a motorcycle with two occupants, the driver and a passenger. The policy itself specifically excluded injury or damage "arising out of the use of a vehicle to carry persons or property for a charge." However, this "vehicle for hire" provision of the policy stated that "[t]his exclusion does not apply to shared-expense ride pools or the charitable carrying of persons." Notwithstanding this particular exclusion, the policy also provided that "[b]odily injury to any passenger while occupying any motorcycle" was excluded.
After the accident, Reidy's estate made a claim under the uninsured motorists provisions of American Standard's policy. Pursuant to the uninsured motorists provisions of its policy, American Standard paid Reidy's estate the policy's maximum limit, $15,000. Reidy's estate subsequently executed a release and trust agreement which released American Standard from all claims arising out of the accident.
At the time of the accident, Reidy was insured under an automobile liability policy issued to her mother by Allstate. Pursuant to the terms of its excess uninsured motorists coverage, Allstate paid Reidy's estate $85,000 which equaled the difference between the policy's maximum uninsured motorists limit, $100,000, and the amount recovered under American Standard's uninsured motorists coverage, $15,000. Before paying uninsured motorists benefits to Reidy's estate, Allstate obtained a release and an assignment of Reidy's right to proceed against American Standard for its failure to offer increased uninsured motorists coverage to Robert Runyan.
On August 8, 1987, Allstate filed a subrogation action against Mark Runyan which alleged that his negligent operation of the motorcycle caused Reidy's death. On December 7, 1987, American Standard offered Runyan a defense to the litigation under a reservation of rights.
On December 21, 1988, American Standard filed a two-count complaint for declaratory judgment which alleged that its policy did not afford coverage to Runyan for injuries sustained by passengers on his motorcycle, that Reidy's estate released American Standard from any claims under the uninsured motorists provisions of its policy, and that Allstate had accepted and paid the claim of Reidy's estate under its excess uninsured motorists provisions.
On April 10, 1989, Allstate filed a motion for summary judgment on American Standard's complaint. In its motion, Allstate argued that American Standard's passenger exclusion was ambiguous and in conflict with both the written representations of the "vehicle for hire" exclusion and the illustration on the cover of the policy.
In its response and cross-motion for summary judgment, American Standard asserted that, under Illinois law, an exclusion which precludes liability coverage for motorcycle passengers is valid and enforceable. American Standard also asserted that its passenger exclusion was neither in conflict with the policy's other exclusions nor in conflict with the illustration on the policy's cover.
On May 30, 1989, the circuit court conducted a hearing on the parties' motions. After considering the respective arguments of the parties, the court found that the "vehicle for hire" exclusion and the illustration on the policy's cover were in conflict with the passenger exclusion and created an ambiguity in the policy. Based on this ambiguity, the court concluded that *165 the liability provisions of American Standard's policy were applicable to the injuries sustained by Reidy.
In this appeal, American Standard maintains that the circuit court erred in granting Allstate's summary judgment motion. Specifically, American Standard contends that the liability exclusions in its policy were clear and unambiguous and, as such, properly excluded liability coverage for bodily injury to passengers on the motorcycle. See Wilhelm v. Universal Underwriters Insurance (1978), 60 Ill.App.3d 894, 17 Ill.Dec. 872, 377 N.E.2d 62.
Summary judgment is appropriate where the pleadings, affidavits, depositions, admissions, and exhibits show that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. (Protective Insurance Co. v. Coleman (1986), 144 Ill.App.3d 682, 686, 98 Ill.Dec. 914, 494 N.E.2d 1241.) Since the construction of an insurance policy presents a question of law, summary judgment is an appropriate disposition when the construction of a policy is at issue. Protective Insurance Co. v. Coleman, 144 Ill. App.3d at 686, 98 Ill.Dec. 914, 494 N.E.2d 1241.
In construing an insurance contract, a clause in a policy which is clear and unambiguous will be applied as written. (Western Casualty & Surety Co. v. Brochu (1985), 105 Ill.2d 486, 495, 86 Ill.Dec. 493, 475 N.E.2d 872; Strzelczyk v. State Farm Mutual Automobile Insurance Co. (1985), 138 Ill.App.3d 346, 349, 93 Ill.Dec. 20, 485 N.E.2d 1230; Murphy v. Peterson (1984), 129 Ill.App.3d 952, 955, 85 Ill.Dec. 112, 473 N.E.2d 480.) An insurance contract will be considered ambiguous if it is subject to more than one reasonable interpretation. (Reserve Insurance Co. v. General Insurance Co. of America (1979), 77 Ill.App.3d 272, 279, 32 Ill.Dec. 552, 395 N.E.2d 933.) However, in determining whether there is an ambiguity, the clause must be read in its factual context, not in isolation. (Strzelczyk v. State Farm Mutual Automobile Insurance Co., 138 Ill. App.3d at 350, 93 Ill.Dec. 20, 485 N.E.2d 1230.) If an exclusionary clause in a policy is relied upon to deny coverage, its applicability must be clear and free from doubt; otherwise any doubts with respect to coverage will be resolved in favor of the insured. International Minerals & Chemical Corp. v. Liberty Mutual Insurance Co. (1988), 168 Ill.App.3d 361, 367, 119 Ill.Dec. 96, 522 N.E.2d 758.
These rules of construction, however, will not support construing a contract against an insurer when no real ambiguity exists. (Western Casualty & Surety Co. v. Brochu, 105 Ill.2d at 495, 86 Ill.Dec. 493, 475 N.E.2d 872.) Courts should neither exercise their inventive powers to create an ambiguity where none exists nor approve of the distortion of language to reach a desired result. (Scudella v. Illinois Farmers Insurance Co. (1988), 174 Ill.App.3d 245, 252, 123 Ill.Dec. 673, 528 N.E.2d 218; International Minerals & Chemical Corp. v. Liberty Mutual Insurance Co. (1988), 168 Ill.App.3d 361, 371, 119 Ill.Dec. 96, 522 N.E.2d 758; Reliance Insurance Co. v. Martin (1984), 126 Ill.App.3d 94, 96, 81 Ill.Dec. 587, 467 N.E.2d 287.) Rather, a court should examine the policy as a whole and, to the extent possible, give effect to all provisions and interpret words according to their plain, ordinary, and popular meanings. International Minerals & Chemical Corp. v. Liberty Mutual Insurance Co., 168 Ill.App.3d at 371, 119 Ill.Dec. 96, 522 N.E.2d 758.
Here, the circuit court, in construing the provisions of American Standard's motorcycle policy, found that the policy's "vehicle for hire" exclusion was in direct conflict with the exclusion for all motorcycle passengers. The court further found that the illustration on the cover of the policy which depicted a motorcycle carrying both a driver and a passenger also was in conflict with the passenger exclusion. Thus, the conflicting written exclusions coupled with the policy illustration created an ambiguity which was resolved in favor of coverage to motorcycle passengers. In reaching its conclusions, the court stated,
"This picture and the first exclusion lead people to believe that the passenger is *166 covered. Then you come in with twelve and say he is not covered. An ambiguity exists."
The first exclusion stated in its entirety that coverage did not apply to
"[b]odily injury or property damage arising out of the use of a vehicle to carry persons or property for a charge. This exclusion does not apply to shared-expense ride pools or to the charitable carrying of persons." (Emphasis added.)
The last exclusion, number twelve, stated that the coverage did not apply to "[b]odily injury to any passenger while occupying any motorcycle."
American Standard argues that the circuit court misconstrued the "vehicle for hire" exclusion. Specifically, American Standard contends that the purpose of the "vehicle for hire" exclusion was to preclude all liability coverage when the insured vehicle was being used for hire; in contrast, the purpose of the passenger exclusion was to preclude all liability coverage for injuries sustained by any passengers on a motorcycle.
For support, American Standard relies upon Western Casualty & Surety Co. v. Brochu (1985), 105 Ill.2d 486, 86 Ill.Dec. 493, 475 N.E.2d 872. In that case, the insured argued that a limitation contained in one exclusion was in conflict with the language in two other exclusions. The supreme court concluded that the provisions in conflict were standard clauses commonly utilized in the insurance trade. Further, the court concluded that each exclusion served a separate and distinct purpose and was not in conflict with the other. Western Casualty & Surety Co. v. Brochu, 105 Ill.2d at 495, 86 Ill.Dec. 493, 475 N.E.2d 872.
Likewise, American Standard argues that the two exclusion provisions in its policy served separate and distinct purposes and were not, if given their plain, ordinary meaning, in conflict.
In response, Allstate contends that the exclusions in American Standard's policy were indeed in conflict. One exclusion was not simply used to narrow an exception contained in an earlier exclusion; rather, the passenger exclusion eliminated the entire exception to the "vehicle for hire" exclusion and was directly in conflict with it.
We agree with the circuit court's conclusion that if the two provisions are given their plain and ordinary meanings, they are in conflict. In the first provision, the "vehicle for hire" exclusion, the policy denies coverage to passengers who have paid to ride on the motorcycle. Those passengers who receive "charitable" rides, however, are exempted from this exclusion. Yet, several provisions later in the policy, any motorcycle passengers, regardless of whether they are "charitable" riders, are excluded from recovery under the policy.
Because exclusionary provisions should be applied only where their terms are clear, definite, and explicit, the circuit court properly held that the passenger exclusion was inapplicable. (State Farm Mutual Automobile Insurance Co. v. Schmitt (1981), 94 Ill.App.3d 1062, 1064, 50 Ill.Dec. 493, 419 N.E.2d 601.) Moreover, ambiguous provisions in which the insurer seeks to limit liability are to be construed most strongly against the insurer and liberally in favor of the insured. State Farm Mutual Automobile Insurance Co. v. Schmitt, 94 Ill.App.3d at 1062, 50 Ill.Dec. 493, 419 N.E.2d 601.
American Standard argues further that, without more, an illustration on the cover of a policy is not in conflict with the written language inside the policy itself. The circuit court, however, found that the illustration did present a conflict with the language in the policy, specifically the passenger exclusion. In so finding, the court stated,
"You have on the cover of the policy * * * a driver with a person behind him and I do not see anywhere an arrow pointing saying that the second party is not covered under this policy, as you did in your briefs. * * * This picture and the first exclusion lead people to believe that the passenger is covered."
American Standard argues that the circuit court misconstrued the case law in its finding that the illustration on the policy's *167 cover rendered the passenger exclusion ambiguous. (See Dobosz v. State Farm Fire & Casualty Co. (1983), 120 Ill.App.3d 674, 76 Ill.Dec. 211, 458 N.E.2d 611.) In Dobosz, the insurance company sent an advertising brochure which illustrated various coverage options. One picture was captioned "Water damage" and depicted rain coming in through an open window. The brochure also stated in small, black print that "[t]his brochure contains only a general description of coverages and is not a statement of contract." The insured made a claim under the policy when water leaked through the walls of the insured's basement. The policy, however, specifically excluded water damage for the type of loss incurred by the insured. Dobosz v. State Farm Fire & Casualty Co., 120 Ill.App.3d at 677, 76 Ill.Dec. 211, 458 N.E.2d 611.
The circuit court found, in Dobosz, that the insurer properly denied the insured's claim for water damage. In reversing the circuit court's ruling, the appellate court stated that the clear implication of the insured's advertising brochure, which depicted coverage for water damage, was in conflict with the policy's exclusionary provisions exempting that type of coverage, thereby creating an ambiguity in the policy which required a finding that the broader coverage applied. Dobosz v. State Farm Fire & Casualty Co., 120 Ill.App.3d at 679, 76 Ill.Dec. 211, 458 N.E.2d 611.
In this case, American Standard contends that the circuit court misapplied and overextended the holding in Dobosz. Because the brochure in Dobosz also contained language which stated that the pictured coverages were "added" to the policy (Dobosz, 120 Ill.App.3d at 677, 76 Ill.Dec. 211, 458 N.E.2d 611), the illustration, standing alone, was not necessarily in conflict with the policy exclusions. American Standard also stresses the fact that the insured in Dobosz relied on the brochure illustrations in choosing his coverage. It argues, despite the lack of record support, that in the instant case the insured relied only on the representations contained in the policy itself.
Notwithstanding American Standard's argument that the illustration, standing alone, could not be in conflict with clear written provisions in the policy, it is possible that the illustration on the front cover of the policy was far more potent a representation than that of a brochure's illustrations. Moreover, in the instant case, there was no qualifying language printed at the bottom of the cover page which might have warned the insured that the impression created by the illustration may have been contradicted by the written language inside the policy itself.
Although Dobosz is not precisely on point, it does offer support for the circuit court's finding that the illustration on the cover of the policy was in conflict with the passenger exclusion inside the policy. It is certainly possible that a reasonable insured would conclude that the illustration depicted a covered activity.
In any event, we conclude that the circuit court did not err in its conclusion that the combination of the illustration on the front cover and the ambiguity in the terms of the policy required coverage for a passenger on the motorcycle. Accordingly, the judgment of the circuit court of Cook County is affirmed.
AFFIRMED.
SCARIANO, P.J., and HARTMAN, J., concur.